

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AAS:JEA/EAH
F.#2019R01179

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 30, 2019

By Hand Delivery and ECF

The Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Awais Chudhary
           Magistrate Docket No. 19-778

Dear Judge Orenstein:

      Later today, defendant Awais Chudhary is scheduled to be presented before Your Honor on the above-referenced complaint. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because the defendant presents a danger to the community and a risk of flight.[1]

I.    The Offense Conduct

      Earlier today, the government filed a one-count complaint in the Eastern District of New York charging Chudhary with attempting to provide material support and resources to the Islamic State of Iraq and al-Sham ("ISIS")[2], in violation of 18 U.S.C.

---

[1]    Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

[2]    ISIS is a designated foreign terrorist organization that, since 2013, has claimed credit for numerous terrorist activities, including seizing Mosul, a city in northern Iraq, launching rocket attacks on eastern Lebanon in March 2014, the November 2015 terrorist attacks in Paris, France, and the March 2016 suicide bombings in Brussels, Belgium, among many others. These terrorist activities are part of ISIS's broader goal of forming an Islamic state or "caliphate" in Iraq and Syria. On or about October 15, 2004, the United States Secretary of State designated al-Qaeda in Iraq (AQI), then known as Jam 'at al Tawid wa' al-Jahid, as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and Nationality

§ 2339B(a)(1). In summary, Chudhary wanted to conduct a knife or bomb attack in Queens, New York, likely in the vicinity of the pedestrian bridges over the Grand Central Parkway to the Flushing Bay Promenade (the "Promenade"), and the New York World's Fair marina located in the Promenade, and to record his attack in order to inspire others to perform similar attacks.

In August 2019, law enforcement authorities began investigating Chudhary, who started conversing with a law enforcement employee acting in an undercover capacity ("UC-1") who was posing as an online supporter of ISIS. Since that time, Chudhary has been in regular correspondence with UC-1 and another law enforcement employee acting in an undercover capacity ("UC-2") through text messaging applications. During those communications, the defendant espoused violent ideology and discussed with UC-1 and UC-2 his desire to conduct a terrorist attack in the New York City area in support of ISIS.

Between August 23, 2019 and the present, the defendant repeatedly expressed his desire to purchase a knife and other resources so that he could commit an attack as a lone wolf. The defendant asked UC-1 for guidance regarding how to properly commit a stabbing attack and information regarding how to "not leave traces of fingerprints [or] DNA[.]" Although the defendant intended to commit a knife attack, he asked UC-1 to also instruct him on "how to build a bucket bomb" so that he could target multiple vehicles in an attack that would be "swift with no traces left behind." The defendant also sent videos depicting bomb attacks to show what types of bombs he wanted to use in his attacks.

Throughout his efforts to acquire a knife, the defendant also repeatedly expressed his admiration and support for ISIS. For example, the defendant stated that he had pledged his allegiance to the leader of ISIS, Abu Bakr al Baghdadi. The defendant also sent a screenshot of a document titled "Islamic State," with the subheadings: "Places to Strike," "The Ideal Knife" and "Knives to Avoid," which included a diagram of a human body and instructions on where to stab a victim.

---

Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant (ISIL) as its primary name. The Secretary of State also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham, The Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furquan Establishment for Media Production. In an audio recording publicly released on June 29, 2014, ISIS announced a formal change of its name to the Islamic State. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO. On numerous occasions, including in a video-recorded statement released in April 2019, ISIS emir Abu Bakr al-Baghdadi has called for ISIS support to conduct terrorism attacks on civilians in Western countries.

Chudhary also conducted multiple reconnaissance trips to potential targets for his attacks. The defendant used his cellular telephone to make video recordings of the areas he was considering as targets, including the pedestrian bridges over the Grand Central Parkway to the Promenade, and the New York World's Fair marina located in the Promenade. The defendant then sent videos of these targets to UC-1 and UC-2 as he discussed what would be the best area and plan for his attack. For example, after the defendant sent videos of the pedestrian bridges, the defendant stated that he was considering throwing explosives at vehicles passing below.

Chudhary and UC-1 also discussed what the defendant wanted to order for the attack, including several knives, gloves, a mask, and a strap for his cellphone. After ordering one knife, the defendant decided to cancel that order because he wanted to have the knife delivered more quickly. The defendant then decided to order a new knife with a serrated edge and sent UC-1 a screenshot of the knife. On or about August 26, 2019, the defendant ordered from an online retailer (Online-Retailer-1) the serrated tactical knife and other items to use for the attack so that they could be delivered to a locker located in Queens. The defendant also ordered the cellphone chest and head strap so that he could record his attack and inspire others to perform similar attacks.

On August 29, 2019, the defendant traveled to the Online Retailer-1 locker located in Queens to pick up the ordered items, including the tactical knife. After the defendant approached the locker and attempted to open it, Chudhary was arrested.

II.   Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, these factors weigh heavily against pretrial release.

For certain offenses, including the offense charged in the Complaint, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3). This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is neither a danger nor a risk of flight. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Stone, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

### III. The Court Should Enter a Permanent Order of Detention

As set forth above, the law presumes that detention is appropriate based on the offense charged, attempting to provide material support and resources to ISIS, in violation of 18 U.S.C. § 2339B(a)(1). Even if there were not such a presumption, the nature and circumstances of the charged offense—attempting to commit a terror attack for ISIS—as well as the strength of the evidence, the history and characteristics of the defendant, and the seriousness of the threat presented by him, see 18 U.S.C. § 3142(g), all support his detention as a danger to the community. Accordingly, the Court should enter a permanent order of detention pending trial.

#### A. The Nature and Circumstances of the Offense Charged

The charged offense is serious, and the circumstances of the charges are even more so. These considerations demonstrate that the defendant is a danger to the community.

With respect to the offense charged in the complaint, Chudhary's statements to undercover officers make clear that he sought the knife and other items to provide support to ISIS through a terror attack. Similarly, the defendant's interest in learning how to build a bomb and use a bomb for future attacks shows that the defendant was willing to conduct even more serious terrorist attacks in support of ISIS.

The defendant sought out videos from UC-1 on how to use a knife in an attack because he wanted to use it effectively and had never "used a knife to spill the impure blood of a kafir," which refers to "non-believers" or non-Muslims. Beyond knives, the defendant has shown an interest in acquiring and using even more dangerous weapons, including certain types of bombs. The defendant discussed using a "bucket bomb" or other light weight explosives in subsequent attacks. As noted above, the defendant sent videos depicting bomb attacks and asked for instructions on how to make bombs.

Finally, the defendant's motivation is not in question here—he stated that he had pledged his allegiance to ISIS and that he was inspired by their attacks. The defendant also sent bombing videos and screenshots of instructions on how to use knives, which were produced by ISIS. In the end, his motive is clear: he wanted to conduct an attack imminently and he was "ok" with dying.

An individual like the defendant, who has carefully considered a terrorist attack in Queens, completed multiple reconnaissance trips to target locations, purchased a knife and supplies to aid in his plan, and stated that he wanted to learn how to use a knife properly so that he could "move and strike swiftly, all for the sake of Allah" presents a grave danger to the community that no set of release conditions can mitigate.

B. The Weight of the Evidence

The weight of the evidence in this case is overwhelming. The defendant was caught attempting to acquire a knife and other items that he could use in a lone wolf attack. Moreover, the defendant's multiple communications with undercover law enforcement agents, which are summarized extensively in the complaint, show the defendant's support for ISIS and the defendant's scheme to commit an attack in support of ISIS. The strength of the case against the defendant gives him a significant motive to flee rather than be convicted at trial. See 18 U.S.C. § 924(a)(1)(B).

C. The Defendant's History and Characteristics

The defendant's history and characteristics confirm he is a substantial risk of flight and danger to the community. As noted above, the defendant has expressed his support for acts of terrorism and ISIS, as well as his interest in committing an attack in the United States. Although he has some ties to this district—he lives with his parents in Queens—the government is not aware of any other significant relationships that the defendant has that might mitigate against an incentive to flee or to engage in conduct dangerous to the community. The defendant also has family in Pakistan, providing him a specific place to which to flee.

D. The Nature and Seriousness of the Danger to the Community Posed by Release

As discussed above, the defendant poses an extreme risk to the community. He has shown an interest in conducting a violent attack in New York City and taken concrete steps to further that plan. Indeed, the instant charge itself involved the defendant attempting to conceal his identity and to evade law enforcement detection (by purchasing gloves and a mask to wear during the attack) presumably so that he could commit future attacks.

5

IV.  Conclusion

        For all of the foregoing reasons, the defendant should be detained pending trial.  The defendant is charged with a serious offense, and the facts surrounding that offense show the defendant's willingness to commit even more serious offenses.  The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:   /s/ Jonathan E. Algor
        Jonathan Algor
        Assistant U.S. Attorney
        (718) 254-7000

cc:   Clerk of Court (by ECF)